UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

THOMAS HENRY,

                        Plaintiff,

v.                                                    9:19-CV-1059
                                                      (DNH/TWD)

DAVID DINELLO,
                        Defendant.
_____

APPEARANCES:                              OF COUNSEL:

THOMAS HENRY
Plaintiff, *pro se*
19711
Cayuga County Jail
7445 County House Road
Auburn, New York 13201

HON. LETITIA JAMES                        KONSTANDINOS D. LERIS
Attorney General for the State of New York    Assistant Attorney General
Counsel for Defendant
The Capitol
Albany, New York 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

Thomas Henry ("Plaintiff"), an inmate in the custody of the New York State Department

of Corrections and Community Supervision ("DOCCS"), commenced this *pro se* action pursuant

to 42 U.S.C. § 1983, asserting his constitutional rights were violated at Gouverneur Correctional

Facility ("Gouverneur C.F.").  (Dkt. No. 8.)  The Honorable David N. Hurd, United States

District Judge, reviewed the amended complaint in accordance with 28 U.S.C. § 1915, and found

Plaintiff's Eighth Amendment deliberate indifference claim against David Dinello ("Defendant") required a response.  (Dkt. No. 9.)

In the amended complaint, Plaintiff contends Defendant refused to approve a surgical procedure to remove two small lumps he has on his left and right breasts.  (Dkt. No. 8 at 1.) According to Plaintiff, non-party Dr. Kasulke made several requests to have the surgery approved but Defendant denied such requests because he deemed the procedure "cosmetic."  *Id*. at 2.  Plaintiff asserts the lumps cause him "extreme pain," "emotional distress" and have "physically deformed his body."  *Id*. at 3.  Plaintiff notes the lump on his left breast is 19 cm and the lump on the right breast is 13 cm.  *Id*. at 5.

Rather than answering Plaintiff's amended complaint, Defendant moved for summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies and alternatively moved to dismiss for failure to state a claim.  (Dkt. No. 18.)  Defendant argues Plaintiff did not complete the administrative review procedures prior to commencing this action and, in any event, he has not adequately pled that his medical condition is objectively serious. (Dkt. No. 18-1.)  For the reasons that follow, the Court recommends Defendant's motion be denied.

## I.    MOTION FOR SUMMARY JUDGMENT

As noted above, Defendant moves for summary judgment in lieu of an answer because he argues Plaintiff failed to exhaust his administrative remedies.  (Dkt. No. 18-1.)  For his part, Defendant acknowledges Plaintiff properly filed a grievance related to his claims and appealed the Superintendent's denial of the grievance to the Central Office Review Committee ("CORC"). *Id*. at 9.  However, Defendant contends Plaintiff commenced this action before he received a

response from CORC regarding his grievance.  *Id*. at 9-10.  Thus, according to Defendant, Plaintiff failed to fully exhaust his administrative remedies.  *Id*. at 10.

During the pendency of this motion, however, the Second Circuit issued a decision that squarely rejects Defendant's arguments.  To that end, the Court held that "an inmate exhausts administrative remedies when he follows the procedure in its entirety but the CORC fails to respond within the 30 days it is allocated under the regulations."  *Hayes v. Dahlke*, 976 F.3d 259, 270 (2d Cir. 2020).  Here, it is undisputed that CORC failed to issue a decision within 30 days after receiving Plaintiff's appeal and Plaintiff commenced this action only after the relevant timeframe.  (Dkt. No. 18-5.)  Defendant acknowledges that *Hayes* controls the relevant issues and rightfully abandoned his argument with respect exhaustion.[1]  (Dkt. No. 26.)  Accordingly, the Court recommends that Defendant's motion for summary judgment be denied.

## II.    MOTION TO DISMISS

### A.    Standard of Review

A defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The motion tests the legal sufficiency of the complaint and whether it conforms to Rule 8(a)(2) of the Federal Rules of Civil Procedure.  To survive a motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . . [W]here the well-pleaded facts

---

[1]  The Court appreciates Defendant's candor in bringing the relevant authority to the Court's attention and acknowledging its implications.

do not permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal citation

and punctuation omitted).  "Factual allegations must be enough to raise a right to relief above the

speculative level." *Twombly*, 550 U.S. at 555.

A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears there are

not "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  While Rule

8(a)(2) "does not require detailed factual allegations, . . . it demands more than an unadorned,

the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citation and internal

quotation marks omitted).  In other words, a complaint which "tenders 'naked assertion[s]'

devoid of 'further factual enhancement'" does not suffice.  *Id.* (citation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the

material facts alleged in the complaint as true and construe all reasonable inferences in the

plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994).  However, "the tenet

that a court must accept as true all of the allegations contained in a complaint is inapplicable to

legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's]

supporting papers liberally, and . . . interpret them to raise the strongest arguments that they

suggest." *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Harris v. Mills*, 572

F.3d 66, 72 (2d Cir. 2009) (courts remain obligated to construe *pro se* complaints liberally even

after *Twombly*).  Where a *pro se* complaint fails to state a cause of action, the court generally

"should not dismiss without granting leave to amend at least once when a liberal reading of the

complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222

F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted).  An opportunity to amend is not required where "[t]he problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."  *Id*.

### B.    Analysis

In this case, Plaintiff alleges Defendant was deliberately indifferent to his medical care in violation of his Eighth Amendment rights when he denied his requests to have two lumps on his breasts surgically removed.  (Dkt. No. 8.)  "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks and citation omitted).  To state a claim for deliberate indifference to a serious medical need, a plaintiff's claim must satisfy both objective and subjective elements.  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).  First, the alleged deprivation "must be, in objective terms, sufficiently serious."  *Id*. (quotations and citations omitted).  "Second, the charged official must act with a sufficiently culpable state of mind."  *Id*.

Under the objective prong, the inmate's medical need or condition must be "a serious one."  *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003).  Factors relevant to the seriousness of a medical condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).

To satisfy the subjective prong, a prison official or medical staff member must have been aware of a substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions.  *See Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006); *see also*

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

Defendant appears to concede that Plaintiff's amended complaint adequately articulates the subjective prong of his medical indifference claim.  (Dkt. No. 18-4 at 13; Dkt. No. 24 at 5.)  However, as noted above, Defendant argues Plaintiff failed to adequately allege that his medical condition is objectively serious.  (Dkt. No. 18-4.)  To that end, Defendant contends the amended complaint fails to allege "how often Plaintiff is in pain, the type of pain he suffers, or whether the lumps on his breasts affect any of his daily life activities, including his ability to sleep."  (Dkt. No. 18-4 at 13.)  Defendant asserts the reason Plaintiff is requesting surgery is "cosmetic" and related to Plaintiff's conclusory claim that having breasts in an all male correctional facility is a safety risk.  *Id*. at 14.

The Court finds Defendant's arguments understate the alleged severity of Plaintiff's conditions and overstate the requirements—at this stage of the proceedings—to adequately allege a serious medical condition.  To that end, Plaintiff's amended complaint notes in several instances that Dr. Kasulke recommended surgical removal of the lumps on Plaintiff's breasts but Defendant denied such requests because he deemed the procedure "cosmetic."  (Dkt. No. 8 at 2.)  Moreover, Plaintiff asserts the lumps cause him "extreme pain," "emotional distress" and have "physically deformed his body."  *Id*. at 3.  In his amended complaint, Plaintiff notes the lump on his left breast is 19 cm and the lump on the right breast is 13 cm.  *Id*. at 5.  Then, in his response

to Defendant's motion, Plaintiff states that "both lumps have increased in size and are now about 22 cm" and are "extremely painful to the touch."[2]  (Dkt. No. 23. at 3.)

Here, drawing "all reasonable inferences" in Plaintiff's favor, as required in ruling on a motion to dismiss, *see Interworks Sys. Inc. v. Merchant Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010), the Court finds Plaintiff's amended complaint plausibly articulates a sufficiently serious medical condition because it appropriately demonstrates he was experiencing extreme pain and an independent doctor found his condition serious enough to recommend surgery.  *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011); *see, e.g.*, *Rivera v. Goord*, 119 F. Supp. 2d 327, 332, 337 (S.D.N.Y. 2000) (finding allegations of deprivation of pain medication for "severe," "unbearable," and "great" pain to be sufficient at the pleading stage where the side effects included migraine headaches, infections, severe burning in his eyes, impaired vision, and partial loss of hearing); *Phillips v. Wright*, No. 9:09-CV-1328 GTS/RFT, 2010 WL 5565669, at *6 (N.D.N.Y. Aug. 11, 2010) (finding allegations of a lump sufficiently serious where they caused excruciating pain and where other medical professionals opined that the lump should be removed).  Accordingly, the Court recommends that Defendant's motion to dismiss be denied.

## III.    CONCLUSION

For the reasons stated above, the Court recommends denying Defendant's motion for summary judgment and his motion to dismiss.

**ACCORDINGLY**, it is hereby

---

[2]  While this information was not initially in Plaintiff's amended Complaint, "where a *pro se* plaintiff has submitted other papers to the Court, such as legal memoranda, the Court may consider statements in such papers to supplement or clarify the plaintiff's pleaded allegations." *Sommersett v. City of New York*, No. 09cv5916, 2011 WL 2565301, at *3 (S.D.N.Y. June 28, 2011).

**RECOMMENDED** that Defendant's motion for summary judgment, or alternatively to dismiss the amended complaint (Dkt. No. 18), be **DENIED**; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[3]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: January 12, 2021
      Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

---

[3]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2010 WL 5565669
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jason PHILLIPS, Plaintiff,

v.

Lester WRIGHT, Dr., Deputy Commissioner
and Chief Medical Officer; Jesus Floresca, M.D.,
Ulster Correctional Facility; Zulma, M.D., Mid–
Orange Correctional Facility; Susan Mueller,
M.D., Wallkill Correctional Facility, Defendants.

Civ. No. 9:09–CV–1328 (GTS/RFT).
|
Aug. 11, 2010.

**Attorneys and Law Firms**

Stoll, Glickman Law Firm, Cynthia H. Conti–Cook, Esq., of
Counsel, Brooklyn, NY, for Plaintiff.

Hon. Andrew M. Cuomo, Attorney General for the State of
New York, Charles J. Quackenbush, Esq., Assistant Attorney
General, of Counsel, Albany, NY, for Defendants.

### REPORT–RECOMMENDATION and ORDER

RANDOLPH F. TREECE, United States Magistrate Judge.

 **\*1** Plaintiff Jason Phillips brings this civil rights action,
pursuant to 42 U.S.C. § 1983, alleging that Defendants
violated his Eighth Amendment rights. Dkt. No. 1, Compl. In
sum and substance, Plaintiff claims that, during his custody
with the New York State Department of Correctional Services
("DOCS"), Defendants failed to surgically remove a lump
from his back for a period of two years, during which
time the lump grew and he experienced extreme pain and
discomfort. *Id.* On January 22, 2010, Defendants filed a
Motion to Dismiss, pursuant to FED. R. CIV. P. 12(b)(6),
to which Plaintiff, who at that time was proceeding *pro se,*
filed a Response in Opposition. Dkt. Nos. 12 & 18. Plaintiff
subsequently obtained counsel and was granted leave to
file another response to replace his *pro se* Response. Dkt.
No. 19. Shortly thereafter, Plaintiff filed a new Response
in Opposition to Defendants' Motion to Dismiss along with
a Cross–Motion to Amend the Complaint. Dkt. No. 25.

Defendants oppose the Cross–Motion to Amend. Dkt. Nos.
26–27.

For the reasons that follow, it is recommended that both
Motions be **granted in part** and **denied in part.**

### I. BACKGROUND

The following facts are derived mainly from Plaintiff's
Proposed Amended Complaint, which adds clarity and
specifics to Plaintiff's *pro se* Complaint, but does not change
its essential accusations nor causes of action. *Compare* Dkt.
No. 1, Compl. *with* Dkt. No. 25–3, Proposed Am. Compl.
Moreover, because Defendants object to Plaintiff's Cross–
Motion to Amend on futility grounds only, *see* Dkt. No.
27, Defs.' Resp. in Opp'n to Pl.'s Mot. to Am., the same
standard of review applies to both the Motion to Dismiss and
the Motion to Amend. *See infra* Part II.A.1–2. Pursuant to
that standard, we must accept Plaintiff's factual allegations
as true in order to determine whether he has stated a facially
plausible constitutional claim under § 1983. Therefore,
we can address both Motions concurrently by applying that
standard to the allegations raised in both the Complaint
and the Proposed Amended Complaint, which, as previously
mentioned, are at a variance only in terms of their detail.

On September 21, 2007, Plaintiff was incarcerated at Ulster
Correctional Facility ("Ulster"), and went to sick call to make
his first complaint about a large swollen lump in his right
shoulder. Proposed Am. Compl. at ¶ 15. Although Plaintiff
did not complain of pain at that time, over the next two
months, the lump grew and the onset of pain began. *Id.* at ¶¶
16–17. On November 8, 2007, Defendant Dr. Jesus Floresca
requested, on Plaintiff's behalf, a referral for a consultation
with a general surgeon, noting that Plaintiff had a "golf-sized
mass" below his right scapula that was increasing in size,
and that while such growth was consistent with a lipoma, [1] it
should be removed due to its size and the pain it was causing.
*Id.* at ¶ 18. Such referral was approved by proposed defendant
APS Healthcare, Inc., a privately held company that contracts
with DOCS to review requests for specialty care. *Id.* at ¶¶ 11
& 18. According to Plaintiff, requests for surgery and other
procedures

 **\*2** are electronically submitted from the facility providers
to APS Healthcare for approval. Requests may be
approved, disapproved, or returned to the facility provider

for further information. If a request is disapproved, the facility provider may appeal of the Regional Medical Director (or "RMD"). Upon information and belief, and based on the attached selection of medical records, APS Healthcare was involved with the denials of surgical excision of plaintiff's painful and growing lipoma.

*Id.* at ¶ 11.

On December 18, 2007, Plaintiff consulted with a general surgeon about the lump, who noted that the size of the lump was 8cm x 4cm x 3cm and recommended its surgical removal. *Id.* at ¶ 19. On December 19, 2007, Dr. Floresca commenced procedures to prepare Plaintiff for surgery and Plaintiff had a medical hold placed on his transfer status so that he would remain at Ulster until after the surgery was completed. *Id.* at ¶ 20. Also on that date, Dr. Jordan Laguio[2] electronically requested that surgery be scheduled to excise the lump. *Id.* at ¶ 21. However, on December 20, 2007, "Central Health Services"[3] denied the procedure because "lipoma surgery is generally considered cosmetic." *Id.* at ¶ 22. Such denial was discussed with Plaintiff on December 27, 2007; at that time the medical hold on his transfer was lifted and the lump was measured at 8cm x 8.5cm. *Id.* at ¶ 23. Dr. Floresca took no further action regarding the surgical excision of Plaintiff's lump. *Id.* at ¶ 24.

On March 6, 2008, after Plaintiff's transfer to Mid–Orange Correctional Facility ("Mid–Orange"), he went to emergency sick-call at midnight and complained of pain in his right shoulder, for which he was given Motrin. *Id.* at ¶ 25. On March 21, 2008, proposed defendant Dr. Zamilus[4] examined Plaintiff and measured the lump at 10cm x 8cm, took photographs of it, and recommended to Defendant Dr. Wright that it be surgically removed. *Id.* at ¶ 26. Defendant Wright denied the request. *Id.* at ¶ 27. Dr. Zamilus took no further action regarding Plaintiff's growth.

On May 29, 2008, Plaintiff complained of pain and difficulty sleeping, for which the nursing staff gave him Ibuprofen. *Id.* at ¶ 29. On June 30, 2008, Plaintiff again complained of pain and was given Motrin. *Id.* at ¶ 30. Dr. Zamilus saw Plaintiff on July 18, 2008, and again made note of his pain. Plaintiff requested contact information for someone regarding the multiple denials of the requested surgery. *Id.* at ¶ 31. On August 11, 2008, and again on September 4, 2008, Plaintiff complained of pain caused by the lump and was given Ibuprofen. *Id.* at ¶ 33. On September 12, 2008, Dr. Zamilus measured the lump at 10cm x 10cm x 3cm, and again referred Plaintiff for surgery. *Id.* at ¶ 34. Plaintiff's medical record, dated September 25, 2008, indicates that he

was referred to surgery for lipoma excision and also given Ibuprofen for his pain. *Id.* at ¶ 35. Less than a month later, Plaintiff was transferred out of Mid–Orange with the lump still in his back. *Id.* at ¶ 36.

**\*3** On October 20, 2008, Plaintiff was transferred to Wallkill Correctional Facility and, during his intake examination, told a nurse that the lump was painful and growing. *Id.* at ¶ 37. A nurse examined Plaintiff on October 22, 2008, and noted that the lump was 10cm x 9cm in size. *Id.* at ¶ 38. Defendant Dr. Susan Mueller examined Plaintiff that same day and prescribed Naproxen and a warm compress for pain management. *Id.* at ¶ 39. By February 24, 2009, Plaintiff's lump was measured at 13cm x 9cm and another request for surgical removal was submitted. *Id.* at ¶ 41. On March 5, 2009, the request for surgical removal was denied by APS Healthcare and by proposed defendant Dr. Timothy Whalen, Regional Medical Director ("RMD"), whose duties included reviewing appeals from denials of surgical requests. *Id.* at ¶¶ 12 & 42.

On July 30, 2009, the lump was measured at 11 cm x 11 cm and Dr. Mueller examined Plaintiff, noting that Plaintiff was "made aware of RMD['s] decision" and that there was "nothing more [she could] offer." *Id.* at ¶ 44. Plaintiff went to sick call again on August 6, 2009, complaining of pain and further stating that the Naproxen was ineffective and aggravating a liver problem. Plaintiff saw Dr. Mueller, who discontinued Naproxen and requested another surgical consultation on Plaintiff's behalf, noting that, at that point, he had been denied surgery four times. *Id.* at ¶ 45. In her August 6, 2009 Consultation Request, Mueller wrote that Plaintiff was

> referred for [an] extremely painful mass arising from [his right] scapula which has continued to increase in size (now is 15 cm x 11 cm). [I] [a]m concerned that this could be a liposarcoma due to painful nature of [the] mass and rapid growth rate (lipomas are not painful). [Inmate] repeatedly in sick call because of pain, inability to sleep, difficulty reaching behind his back and raising his arm.

*Id.* at ¶ 46.

Mueller's request was entered electronically, approved, and Plaintiff met with a consultant on August 24, 2009, who recommended that an excision be performed soon. *Id.* at ¶¶ 46–47.

Plaintiff's lipoma was surgically removed on September 25, 2009, at Albany Medical Center, after which a biopsy confirmed that the growth was a benign fatty tissue. *Id.* at ¶ 48. Plaintiff has a six-inch long scar on his back from the excision and, based on advice from his current medical providers, has continued to restrict the movement in his right arm. *Id.* at ¶ 50. Plaintiff contends that

> [t]he significance of the delay on the surgery has heightened the risk that plaintiff will suffer from another lipoma, there is a greater risk of damage to the surrounding tissue as a result of the size the lipoma was allowed to grow, there is a greater risk of fluid accumulating in the cavity left by the removal of the fatty-lipoma tissue, and potential irreversible injury to nerves and tissues in the structures surrounding the lipoma cavity.

**\*4** *Id.* at ¶ 50.

## II. DISCUSSION

### A. Standards of Review

#### 1. *Motion to Dismiss*

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto,* 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski,* 1997 WL 394667, at \*2 (N .D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir.1991)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint'* may be considered by the court in ruling on such a motion." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007) (quoting *Cortec Indus ., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991) (emphasis added).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL–CIO v. Schermerhorn,* 373 U.S. 746, 754 n. 6 (1963); *see also Arar v. Ashcroft,* 532 F.3d 157, 168 (2d Cir.2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* ––– U.S. ––––, 129 S.Ct. 1937, 1949 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007); *Ashcroft v. Iqbal,* ––– U.S. –––– 129 S.Ct. at 1950 (citing *Twombly* ). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* ––– U . S . –––– 129 S.Ct. at 1949. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged or that the defendants have violated the ... laws in ways that have not been alleged." *Assoc. Gen. Contractors*

*of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims ... across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal,* ––– U.S. –––– 129 S.Ct. at 1950–51.

### 2. Motion to Amend

**\*5** FED. R. CIV. P. 15(a) states, in pertinent part, that leave to amend a pleading should be "freely given when justice so requires." *Ellis v. Chao,* 336 F.3d 114, 127 (2d Cir.2003). Indeed, leave to amend should be denied only in the face of undue delay, bad faith, undue prejudice to the non-movant, futility of amendment, or where the movant has repeatedly failed to cure deficiencies in previous amendments. *Foman v. Davis,* 371 U.S. 178, 182 (1962); *Kropelnicki v. Siegel,* 290 F.3d 118, 130 (2d Cir.2002) (citing *Chill v. Gen. Elec. Co.,* 101 F.3d 263, 271–72 (2d Cir.1996)). District courts are vested with broad discretion to grant a party leave to amend the pleadings. *See Local 802, Assoc. Musicians of Greater New York v. Parker Meridien Hotel,* 145 F.3d 85, 89 (2d Cir.1998).

In this instance, Defendants assert that Plaintiff's proposed claims are futile and, as such, his Motion to Amend should be denied. Dkt. No. 27, Defs.' Resp. in Opp'n to Pl.'s Mot. to Am. The Second Circuit has stated that where futility is raised as an objection to the motion to amend, and

> [w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend. *See, e.g., Foman v. Davis,* 371 U.S. at 182, 83 S .Ct. at 230 (denial not abuse of discretion where amendment would be futile); *Health–Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990) ("where ... there is no merit in the Proposed amendments, leave to amend should be denied"); *Billard v. Rockwell International Corp.,* 683 F.2d 51, 57 (2d Cir.1982) (denial not abuse of discretion where plaintiff had had "access to full discovery" in a related case).

*Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993).

As futility is an appropriate basis for denying leave to amend, such denial should be contemplated within the standards necessary to withstand a motion to dismiss pursuant to FED. R. CIV. P. 12(b) (6). *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 88 (2d Cir.2002) (citing *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991)); *see supra* Part I.A. As noted above, on a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v.. Beto,* 405 U.S. at 322.

### B. Eighth Amendment Claims

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. Prohibited punishment includes that which "involve[s] the unnecessary and wanton infliction of pain." *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (quoting *Gregg v. Georgia,* 428 U.S. 153, 173 (1976)). To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan,* 511 U.S. 825, 834–35 (1994); *Hathaway v. Coughlin ("Hathaway I"),* 37 F.3d 63, 66 (2d Cir.1994). The first prong is an objective standard and considers whether the medical condition is sufficiently serious. The Second Circuit has stated that a medical need is serious if it presents " 'a condition of urgency' that may result in 'degeneration' or 'extreme pain.' " *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (quoting *Hathaway I,* 37 F.3d 63, 66 (2d Cir.1994)). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong,* 143 F.3d at 702 (quoting *McGuckin v. Smith,* 974 F.2d 1050, 1059–60 (9th Cir.1992)).

**\*6** The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter,* 501 U.S. 294, 301–03 (1991); *Hathaway I,* 37 F.3d at 66. A plaintiff must

demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan,* 511 U.S. at 836. This requires "something more than mere negligence ... but something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996) (citing *Farmer* ). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance v. Armstrong,* 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II" ),* 99 F.3d 550, 553 (2d Cir.1996)); *see also Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003) (citations omitted).

### 1. *Serious Medical Need*

Defendants assert that Plaintiff's Eighth Amendment claims must fail because he does not allege a serious medical condition. Plaintiff contends that the lump in his back constituted a serious medical condition because of its size and location, the substantial pain it caused, and its interference with his ability to function. On that last point, Plaintiff states that the growth interfered with his ability to move his right arm, stand up straight, lift his arms, lie on his back, and sleep. Dkt. No. 25, Pl.'s Mem. of Law at p. 20.

It is alleged that after the lump was surgically removed, it was confirmed that the growth was a non-cancerous lipoma. Proposed Am. Compl. at ¶ 48. Nonetheless, such a medical condition might still be sufficiently serious under the Eighth Amendment if it was extremely painful. *Chance v. Armstrong,* 143 F.3d at 702. In his original Complaint, Plaintiff stated that he "suffered countless nights in excruciating pain, and days when the acute pain would literally bring plaintiff to his knees."[5] Dkt. No. 1, Compl. at ¶ 11. Moreover, Plaintiff alleges that several medical professionals opined that given such pain and restricted movement, the growth should be removed. These allegations of substantial pain and significant affect on Plaintiff's daily life are sufficient to pass muster under the objective prong of the Eighth Amendment standard at the pleading stage. *Chance v. Armstrong,* 143 F.3d at 702; *see also Bolden v. Zernicke,* 1999 WL 731780, at *7 (N.D.Ill. Aug. 30,

1999) (finding a question of fact existed when the record evidence showed that a lipoma restricted plaintiff's range of movement and two specialists recommended that the growth be removed).

### 2. *Deliberate Indifference*

**\*7** Plaintiff alleges that the multiple rejections of his requests for surgery constituted deliberate indifference on the part of those who denied such requests. In addition, Plaintiff alleges that Defendants who made recommendations for surgery on his behalf were also deliberately indifferent to his serious medical needs because they did not take steps to "appeal" the denials of such requests made by their superiors.

### a. *Dr. Jesus Floresca, Dr. Zamilus, and Dr. Mueller*

Plaintiff claims Drs. Floresca, Zamilus, and Mueller were deliberately indifferent to his medical needs based on their responses to his requests for treatment. Plaintiff alleges that Defendant Dr. Floresca requested a referral for a consultation with a general surgeon on his behalf, which was approved. Proposed Am. Compl. at ¶ 18. The consultant recommended Plaintiff get surgery to remove the growth and Floresca commenced procedures to prepare Plaintiff for surgery, however, on December 20, 2007, the request for surgery was denied by Central Health Services because it was deemed to be cosmetic in nature. *Id.* at ¶¶ 20 & 22. Plaintiff alleges that Dr. Floresca took no further action regarding the surgical excision of the lump and was deliberately indifferent because he "did not appeal the decision from Central Health Services on December 20, 2007 that denied the excision of plaintiff's painful and growing lump." *Id.* at ¶ 68.

With respect to Dr. Zamilus, Plaintiff alleges that he examined Plaintiff on March 21, 2008, and then submitted a request to Dr. Wright for surgical removal, which was denied. Proposed Am. Compl. at ¶¶ 26–27. On September 12, 2008, Dr. Zamilus again made a referral for surgery on Plaintiff's behalf, which was also denied. *Id.* at ¶¶ 34–35.

As per Defendant Dr. Susan Mueller, Plaintiff alleges that she examined him two days after his transfer to Mid–Orange on October 20, 2008, and prescribed him Naproxen and a warm compress for his shoulder pain. *Id.* at ¶¶ 37–39. Plaintiff asserts that another request for surgery was submitted on or about February 24, 2009, but he does not allege who

made such request, however, Plaintiff alleges that Dr. Mueller examined him on July 30, 2009, and noted that Plaintiff was made aware of proposed Defendant Whalen's denial of the request and that there was "nothing more [she could] offer him." *Id.* at ¶ 41. These allegations suggest that it was Mueller who made the request on February 24, 2009. In any event, notwithstanding the denial of such request, after meeting with Plaintiff on August 6, 2009, Mueller requested yet another surgical consultation. *Id.* at ¶¶ 45–46. That request was approved and, as a result, Plaintiff ultimately had the growth removed on September 25, 2009. *Id.* at ¶¶ 47–48.

These allegations do not carry a hint of deliberate indifference with respect to Drs. Floresca, Zamilus, or Mueller. To the contrary, Plaintiff alleges that they accurately diagnosed him, provided pain medication, and requested the surgery he allegedly needed. The fact that such requests were denied does not suggest a deliberate indifference to his medical needs, nor does the allegation that Drs. Floresca and Mueller failed to "appeal" the denials to the requests they submitted. In that respect, it is alleged that both Drs. Mueller and Zamilus renewed their requests for surgery despite being initially denied, which actions might be considered an appeal in fact, if not in form.

**\*8** Moreover, there is absolutely no allegation that Floresca, Zamilus, or Mueller was personally involved in any alleged deprivation of medical attention. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (citations omitted). It simply does not follow that a doctor without final authority to authorize surgery can be held liable when he or she makes a request for surgical intervention that is denied by his or her superior. *See Benjamin v. Schwartz,* 299 F.Supp.2d 196, 199–200 (S.D.N.Y.2004) (granting motion to dismiss prisoner's primary care doctor when his only allegation was that the doctor failed to encourage the orthopedic surgeon to perform surgery sooner). Thus, Plaintiff's claims against Floresca, Zamilus, and Mueller are facially implausible and therefore futile.

Therefore, it is recommended that the Motion to Dismiss Plaintiff's claims against Defendants Floresca and Mueller be **granted** and Plaintiff's Cross–Motion to Amend be **denied** as per his proposed claims against Defendants Floresca, Mueller, and proposed defendant Zamilus (a/k/a unserved Defendant Zulma).

b. *Dr. Whalen, Dr. Wright, and APS Healthcare, Inc.*

Plaintiff claims that Dr. Whalen, Dr. Wright and APS Healthcare, Inc., directly prevented him from receiving the care he needed when they denied the aforementioned requests for surgery submitted on his behalf. Specifically, Plaintiff alleges deliberate indifference based upon Wright's denial of the requests for surgical excision of the lump made by Dr. Floresca on December 20, 2007, Dr. Zamilus on March 21, 2008, and based upon the denial of Dr. Mueller's March 5, 2009 request for surgical removal of the growth by both Dr. Whalen and APS Healthcare, Inc. Proposed Am. Compl. at ¶¶ 54–56 & 62.

Plaintiff contends that Whalen, Wright, and APS Healthcare consciously disregarded and/or ignored his serious medical need based upon a blanket policy of categorizing all lipoma removal surgeries as cosmetic in nature. These allegations are sufficient to state a valid claim under the Eighth Amendment and are therefore not futile. *Chance v. Armstrong,* 143 F.3d at 702; *see also, e.g., Jones v. Westchester Cnty. Dep't of Corrs. Med. Dep't,* 557 F.Supp.2d 408, 415–16 (S.D.N.Y.2008) (holding that plaintiff's allegation that defendants refused his needed surgery in order to avoid costs stated a valid claim under the Eighth Amendment) (citing cases); *Rush v. Artuz,* 2004 WL 1770064, at \*10 (S.D.N.Y. Aug. 6, 2004) (finding a question of fact existed where defendant was denied surgery despite multiple requests made on plaintiff's behalf by various medical personnel). Discovery may reveal that such denials did not constitute deliberate indifference, but rather, were rational medical decisions based on the information available at the time. However, at this stage of the litigation, Plaintiff need not *demonstrate* deliberate indifference on their part, rather, he must simply plead sufficient factual allegations so as to create a plausible claim of deliberate indifference. This Plaintiff has done . [6] Therefore, it is recommended that the Motion to Dismiss be **denied** as against Defendant Wright, and that the Motion to Amend be **granted** with respect to Plaintiff's proposed claims against Wright, Whalen, and APS Healthcare.

### C. Unserved Defendant

**\*9** Under Federal Rule of Civil Procedure 4(c)(1), the plaintiff is responsible for service of the summons and

complaint for each defendant within a specified time period. Specifically, the plaintiff must effectuate service of process within 120 days of the filing of the complaint. FED. R. CIV. P. 4(m). [7] Failure to properly serve any defendant in accordance with the Federal Rules will result in the court, upon motion or on its own initiative, to dismiss the case without prejudice as to that defendant. *Id.*

In this case, there is no indication that the Defendant named "Zulma" in the Complaint and "Zamilus" in the Proposed Amended Complaint has been properly served. Although the courts must afford plaintiffs notice before they may dismiss a claim for failure to serve a defendant, FED. R. CIV. P. 4(m), in this case, because Plaintiff's claims against this person lack merit, granting Plaintiff the opportunity to properly serve him would be futile. Thus, it is recommended that Plaintiff's claims against Defendant Zulma be **dismissed.**

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED,** that Defendants' Motion to Dismiss (Dkt. No. 12) be **granted in part** and **denied in part** in accordance with the above opinion; and it is further

**RECOMMENDED,** that Defendants Floresca, Zulma (a/k/a Zamilus), and Mueller be dismissed from this action; and it is further

**RECOMMENDED,** that Plaintiff's Cross–Motion to Amend (Dkt. No. 25) be **granted in part** and **denied in part** in accordance with the above opinion; and it is further

**RECOMMENDED,** that should the District Court adopt the above recommendations, that Plaintiff be required to file a new Amended Complaint *within thirty (30) days of the date of such adoption* that is consistent with the recommendations made herein; and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report–Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir.1993)* (citing *Small v. Sec'y of Health and Human Servs ., 892 F.2d 15 (2d Cir.1989)*); *see also* 28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72, 6(a), & 6(e).

### All Citations

Not Reported in F.Supp.2d, 2010 WL 5565669

### Footnotes

1    A lipoma is a "benign tumor composed chiefly of fat cells." THE AMERICAN HERITAGE MEDICAL DICTIONARY (Rev. ed.2007).

2    Dr. Laguio is not a named Defendant in this action.

3    It is not clear from the Proposed Amended Complaint whether Central Health Services is another name for APS Healthcare or if it is another entity altogether. *See generally* Proposed Am. Compl.

4    In the original Complaint, Plaintiff named "Dr. Zulma" as a Defendant. Dkt. No. 1. After the Summons for Dr. Zulma was returned unexecuted, Dkt. No. 9, Plaintiff explained in a letter to the Court that he had misspelled the name and clarified that he intended to name "Dr. Zamilus" as a Defendant. Dkt. No. 13, Lt., dated Jan. 22, 2010. A Summons was re-issued with the correct spelling but was again returned unexecuted. Dkt. Nos. 14 & 23. In his Response to Defendants' Motion to Dismiss/Cross–Motion to Amend, Plaintiff indicates that his spelling of the name Dr. Zamilus "is an approximation" based on barely legible medical notes which were attached to both the Complaint and the Proposed Amended Complaint. Dkt. No. 25, Pl.'s Mot. to Am. at p. 1 n. 1. To date, Dr. Zamilus has not been served with process.

5    Plaintiff's Proposed Amended Complaint also includes allegations of constant pain and suffering. *See* Proposed Am. Compl. at ¶¶ 51, 53, 56, 61–62, & 67.

6    We note that Plaintiff will need to demonstrate that APS Healthcare, Inc., a private corporation, was acting in concert with a state actor when it allegedly violated his constitutional rights. Because Plaintiff alleges that APS Healthcare is under contract with DOCS, he has made a facially valid allegation that such entity acted under color of state law. *See* *Sykes v. McPhillips,* 412 F.Supp.2d 197, 202 (N.D.N.Y.2006) (citing cases).

7    Under the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days. N.D.N.Y.L .R. 4.1(b).

---

**End of Document**                                         © 2021 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**    © 2021 Thomson Reuters. No claim to original U.S. Government Works.    8

2011 WL 2565301
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Joy Eyvonne SOMMERSETT, Plaintiff,
v.
The CITY OF NEW YORK et al., Defendants.

No. 09 Civ. 5916(LTS)(KNF).
|
June 28, 2011.

### MEMORANDUM OPINION AND ORDER

LAURA TAYLOR SWAIN, District Judge.

**\*1** Joy Eyvonne Sommersett ("Plaintiff"), proceeding *pro se,* brings this action against the City of New York and the New York City Department of Probation ("Probation Department") (collectively, "Defendants"), alleging disparate treatment, failure to promote, and a hostile work environment due to age discrimination and retaliation for having filed previous race- and age-discrimination complaints with the New York State Division of Human Rights ("SDHR") (in 1991 and 2005) and the Equal Employment Opportunity Commission ("EEOC") (in 2005). The claims against Defendants are brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, *et seq* . ("ADEA"), and the New York State Human Rights Law, N.Y. Exec. L. §§ 290, *et seq.* ("NYSHRL"). The Court has jurisdiction of Plaintiff's federal-law claims pursuant to 28 U.S.C. § 1331, and exercises supplemental jurisdiction of the state-law claims pursuant to 28 U.S.C. § 1367(a).

Defendants urge that all of Plaintiff's claims under Title VII and the ADEA must be dismissed because Plaintiff failed to exhaust her administrative remedies for the acts complained of; that Plaintiff's claims under the NYSHRL are barred by the doctrine of election of remedies; and the complaint should be dismissed in its entirety, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.

The Court has considered thoroughly the parties' submissions. For the following reasons, Defendants' motion is granted in part and denied in part.

### BACKGROUND

According to the form complaint ("Compl.Form") and the attached exhibit ("Compl. Ex." and, with the Compl. Form, the "Complaint") outlining her Complaint for Employment Discrimination, Plaintiff is an African–American woman (Compl. Form at 1), was born in 1945 (Compl. Form at 3), and has worked for the Probation Department as a probation officer since 1984. (*Id.*) Plaintiff has filed race and age discrimination complaints with administrative agencies against the Probation Department twice, in 1991 and 2005.

*Plaintiff's 1991 Complaint to SDHR*
According to the Recommended Findings of Fact, Opinion and Decision, and Order issued in 2008 by an administrative law judge pursuant to Plaintiff's 2005 complaint ("2005 SDHR Opinion"), Plaintiff had filed a prior complaint ("1991 Admin Complaint") of racial discrimination with the SDHR (2005 SDHR Opinion ¶ 4), regarding an incident in which Arthur Levitt, a "white, Jewish male supervisor," now deceased, allegedly called her a "black bitch" in connection with a dispute over a parking space (Compl. Form at 2). The 1991 Admin Complaint was settled by the parties in 2003. (2005 SDHR Opinion ¶ 5.)

*Plaintiff's 2005 Complaints to SDHR and EEOC*
In 2005, Plaintiff filed a second complaint with the SDHR ("2005 Admin Complaint"), alleging unfair treatment because of her age and race, and retaliation for having filed the 1991 Admin Complaint. (2005 Admin Complaint ¶ 3.) This complaint was also concurrently submitted to the EEOC (*id.,* at 3; *see also* EEOC Letter to Department of Probation), and was amended in 2006 ("Amended Admin Complaint") to include additional allegations (*see generally* Amended Admin Complaint).

**\*2** In April 2008, following an investigation by the SDHR, an administrative law judge made a recommendation that all of Plaintiff's discrimination claims be dismissed. In June 2008, this recommendation was adopted in its entirety by the SDHR in a Notice and Final Order. In March 2009, the EEOC issued a letter to Plaintiff ("EEOC Right–to–Sue Letter"), notifying her that the Commission had adopted the SDHR's

findings and dismissed the Amended Admin Complaint, and that Plaintiff was entitled to file a lawsuit in federal or state court based on those Title VII and ADEA claims which had been raised in her administrative complaint.

*Filing and Factual Background of Plaintiffs′ Instant Claims*
In the instant suit, Plaintiff complains primarily of numerous incidents that allegedly occurred subsequent to her 2005 Admin Complaint, in which her superiors and co-workers at the Department of Probation allegedly treated her improperly due to age discrimination, or in retaliation for her previous discrimination complaints, or both. In her Complaint, she states that the alleged discriminatory acts occurred on "1/1/08 —present. (additionally, the past 25 years)." (Compl. Form ¶ IIB.) However, the Complaint identifies only post–2007 events.

In the Exhibit to the Complaint, Plaintiff alleges that, in December 2008, she was falsely accused of mishandling a probation case in a manner which led to the deaths of three people. (Compl.Ex. ¶¶ 2–4.) As a result, Plaintiff was suspended (*id.* at 2); placed on probation (*id.*); and transferred to an assignment in Queens which was distant from her home in the Bronx, and which required her to perform "high-risk" duties (*id.* ¶¶ 9–11). Plaintiff further alleges, generally, that this transfer was part of a pattern in which employees were terminated in retaliation for filing complaints against the Probation Department (*id.* ¶ 1), and older probation officers with health problems were deliberately given assignments that were "inconvenient or risky because of their health" in order to encourage them to resign (*id.* ¶ 24), or were otherwise transferred to high-risk duties "as a punitive measure" (*id.* ¶ 32).

Plaintiff also complains that the Probation Department wrongfully failed to promote her (*id.* ¶ 25), that multiple supervisors have given her undeserved reprimands (*id.* ¶¶ 6, 17–18), that she was not evaluated properly immediately after the transfer to Queens (*id.* ¶¶ 8–10, 13), and that superiors have manipulated her working conditions in various ways in order to hamper her successful job performance—e.g., failing to provide her with proper duty instructions (*id.* ¶ 11), training (*id.* ¶ 29), case documentation (*id.* ¶ 12), field partners (*id.* ¶¶ 14–16), and computer equipment (*id.* ¶ 20)—while also sending her to unnecessary training sessions which took away from time needed to manage her workload (*id.* ¶¶ 19, 28).

**\*3** Additionally, Plaintiff alleges that several incidents which occurred both before and after her 2005 Admin

Complaint demonstrate hostility towards her based on her age and prior discrimination complaints—including a comment by a supervisor indicating that the Department was "just waiting for [Plaintiff] to retire" (*id.* ¶ 8); a supervisor's complaint about the cost of having to appear in court pursuant to Plaintiff's prior discrimination case (*id.* ¶ 27); comments by unspecified employees calling her a "troublemaker" following her complaints (*id.* ¶ 23); and loud statements by a supervisor that a discrimination complaint had been filed and a comment by the same supervisor that "[W]e have to get [Plaintiff]" (*id.* ¶ 22).

Finally, Plaintiff complains of a number of other incidents involving negative treatment by co-workers or superiors. She alleges that she frequently suffered "unprofessional and verbally abusive" treatment when meeting with a branch chief (Compl.Ex.¶ 5); and that she was: cursed at by a supervisor (*id.* ¶ 7); falsely accused of referring probationers to the wrong employment programs (*id.* ¶ 17); incorrectly criticized for the wording of one of her reports (*id.* ¶ 18); inappropriately questioned as to the contents of a bag containing personal items (*id.* ¶ 18); repeatedly told by a branch chief that "[i]f [he] didn't want [Plaintiff] to work here, [she] would not be here" (*id.*); targeted with glares and angry faces (*id.* ¶ 22); avoided by supervisors in the hallways (*id.*); criticized in front of others by a supervisor who said that "[Plaintiff] didn't do anything for five years" and ignored when she complained about this incident to the departmental EEO office (*id.* ¶ 26); harassed with false accusations of failing to read office emails, and told "in a loud harsh manner before staff in the immediate area" that she needed to attend computer training (*id.* ¶ 28); ignored by a supervisor who would avoid eye contact, frown, and mutter whenever Plaintiff asked a question; told not to "open[ ] up a can of worms" by filing reports of potential child abuse by probationers (*id.* ¶ 31); and forced to miss a doctor's appointment in order to avoid being disciplined (*id.* ¶ 33).

## DISCUSSION

In deciding a Rule 12(b)(6) motion to dismiss, the Court accepts as true the non-conclusory factual allegations in the complaint and draws all reasonable inferences in the plaintiffs favor. *Roth v. Jennings,* 489 F.3d 499, 501 (2d Cir.2007); *see also Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). In adjudicating the motion, the Court may consider "any written instrument attached to [the complaint]

as an exhibit or any statements or documents incorporated in [the complaint] by reference." *Rothman v. Gregor,* 220 F.3d 81, 89 (2d Cir.2000). Furthermore, "where a *pro se* plaintiff has submitted other papers to the Court, such as legal memoranda, the Court may consider statements in such papers to supplement or clarify the plaintiff's pleaded allegations." *Milano v. Astrue,* No. 05 Civ. 6527(KMW)(DF), 2007 WL 2668511, at *2 (S.D.N.Y. Sept. 7, 2007) (Freeman, M.J.) (collecting cases).

**\*4** With respect to the pleading standards of Rule 8, "[t]o survive a motion to dismiss, a. complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal,* 129 S.Ct. at 1949. This plausibility standard does not amount to a "probability requirement," but it calls for more than a "sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks and citation omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and citation omitted). "[A] complaint need not establish a *prima facie* case of employment discrimination to survive a motion to dismiss; however, the claim must be facially plausible and must give fair notice to the defendants of the basis for the claim," *Barbosa v. Continuum Health Partners, Inc.,* No. 09 Civ. 6572(SAS), 2010 WL 768888, at *3 (S.D.N.Y. Mar. 8, 2010) (internal quotation marks omitted).

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted); *see also* *Boykin v. KeyCorp,* 521 F.3d 202, 213–14 (2d Cir.2008). Such a complaint should be interpreted to raise the strongest arguments that it suggests, *Weixel v. Bd of Educ.,* 287 F.3d 138, 145–46 (2d Cir.2002), although it is not appropriate to assume that a plaintiff can prove facts or establish claims that she has not alleged in the complaint. *Assoc. Gen. Contractors of Cal. Inc. v. Cal. State Council of Carpenter,* 459 U.S. 519, 526 (1983).

*Administrative Exhaustion of Title VII and ADEA Claims*
Before seeking redress in federal court under Title VII or the ADEA for alleged instances of employment discrimination,

a plaintiff must first address the alleged discrimination in a timely complaint to the EEOC or a state agency with equivalent authority. *See* 42 U.S.C, § 2000e–5(e) (Title VII); 29 U.S.C. §§ 626(d), 633(b) (ADEA). Defendants argue that Plaintiff's Complaint, which does not assert any of the claims specifically described in Plaintiff's administrative complaints, must be dismissed as unexhausted to the extent Plaintiff seeks to pursue Title VII and ADEA claims.

The Second Circuit recognizes an exception to this "exhaustion" requirement where a plaintiff's claims in a discrimination suit are "reasonably related" to the allegations raised in her prior EEOC complaint, since allowing such a suit to be brought would not frustrate the statutory purpose of preserving an opportunity for administrative investigation, mediation, and redress of the complaint. *Butts v. New York Dep't of Hous. Preservation & Dev.,* 990 F.2d 1397, 1401–02 (2d Cir.1993). For the purposes of this exception, a claim is deemed to be "reasonably related" to a prior EEOC complaint (1) "where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination;" (2) where the claim alleges "retaliation by an employer against an employee for filing an EEOC charge;" or (3) where the claim "alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Id.* at 1402–03. These exceptions apply with equal force to claims brought under the ADEA, whose exhaustion requirement is identical to that of Title VII. *Terry v. Ashcroft,* 336 F.3d 128, 151 (2d Cir.2003). The first of these exceptions is inapplicable to conduct which takes place after the EEOC has completed its investigation. *Perez,* 2009 WL 3634038 at *16.

**\*5** None of the conduct alleged in the Complaint was addressed in Plaintiff's previous administrative complaints. Thus, Plaintiff's claims under the ADEA and Title VII may proceed only to the extent they are reasonably related to the 2005 administrative complaints on the basis of which her EEOC Right–to–Sue Letter was granted.

None of the post–2007 conduct specifically alleged in the current Complaint would have fallen within the scope of an EEOC investigation that would have grown out of the 2005 administrative complaints, nor does any of the conduct described in the Complaint constitute discrimination allegedly carried out in precisely the same manner alleged

in the EEOC charge. Accordingly, to the extent Plaintiff seeks to pursue the instant claims as ones of age- or other non-retaliation based disparate treatment or hostile work environment under ADEA or Title VII based on post–2007 conduct the Complaint must be dismissed as unexhausted. Plaintiff's allegations of retaliation suffice, however, to frame the requisite reasonable relationship with the year 2005 administrative complaints.

*Preclusion of Certain Claims Brought Under the NYSHRL*
In contrast with the federal statutes addressing employment discrimination, which require that plaintiffs *exhaust* their administrative remedies before filing suit, equivalent employment discrimination claims under New York state law are subject to an administrative *preclusion* rule, under which a party who has pursued an administrative complaint of discrimination with a state agency forfeits the right to sue upon the same claims. N.Y. Exec. Law § 297(9) (McKinney Supp.2011). The statutory preclusion rule does not, however, bar NYSHRL lawsuits based on claims that the state agency dismissed as untimely. *Id.*

Plaintiff is barred from pursuing her NYSHRL claims in this action to the extent the claims were raised in her 2005 administrative complaints, except any claims relating to the period prior to December 12, 2004, which were dismissed by the SDHR as untimely.[1] Plaintiff's NYSHRL claims regarding post–2007 conduct were not raised with the SDHR and thus are not precluded by the prior administrative proceedings.

*Whether Plaintiff's Remaining Claims are Plead Sufficiently*
Although Plaintiff need not allege facts sufficient to make out a *prima facie* case for any of her discrimination claims in her Complaint, the elements thereof provide an outline of what is necessary to render her claims for relief plausible. The same analysis is generally applied to claims brought under Title VII and the ADEA alleging disparate treatment, *Smith v. Xerox Corp.,* 196 F.3d 358, 367 (2d Cir.1999), a hostile work environment, *Brennan v. Metropolitan Opera Ass'n,* 192 F.3d 310, 318 (2d Cir.1999), or retaliation, *Manzi v. DiCarlo,* 62 F.Supp.2d 780, 793–94 (E.D.N .Y.1999). Furthermore, "claims under the NYSHRL are analyzed identically to claims under the ADEA and Title VII," and thus "the outcome of an employment discrimination claim made pursuant to the NYSHRL is the same as it is under the ADEA

and Title VII." *Smith,* 196 F.3d at 363 n. 1. Consequently, the Court will only discuss Plaintiff's federal and state claims separately where the distinct administrative and procedural requirements of the respective statutes differ.

**\*6** A plaintiff alleging disparate treatment discrimination must establish a *prima facie* case by showing "(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Leibowitz v. Cornell Univ.,* 584 F.3d 487, 498 (2d Cir.2009). Where the complaint alleges a failure to promote, the plaintiff must ultimately show that "1) she is a member of a protected class; 2) her job performance was satisfactory; 3) she applied for and was denied promotion to a position for which she was qualified; and 4) the position remained open and the employer continued to seek applicants." *Cruz v. Coach Stores, Inc.,* 202 F.3cl 560, 565 (2d Cir.2000) (internal quotation marks omitted).

Title VII also makes it unlawful for an employer "to discriminate against ... any individual ... because he has ... made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e–3(a). The ADEA includes a nearly identical anti-retaliation provision. 29 U.S.C. § 623(d); *see also Manzi,* 62 F.Supp.2d at 793–94. In order to prove a *prima facie* case of retaliation, a plaintiff must show that "(1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." *Gregory,* 243 F.3d at 700 (internal quotation marks omitted).

*Disparate Treatment*
As Plaintiff's federal disparate treatment claims are barred as unexhausted, Plaintiff's only remaining disparate treatment claim is the NYSHRL claim. Determining what constitutes an "adverse employment action" for the purposes of a discrimination claim requires a careful case-by-case analysis. *Wanamaker v. Columbian Rope Co.,* 108 F.3d 462, 466 (2d Cir.1997). In general,

[a] plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment. To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation.

*Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir.2000) (alteration in original) (internal quotation marks and citations omitted). However, while a court must carefully consider the unique circumstances of each claim, employment-discrimination laws are not intended to establish a "general civility code for the American workplace." *See Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 80 (1998) (discussing Title VII). Mere unfair criticism or reprimands unaccompanied by more serious results, such as probation or a decrease in pay, cannot by themselves support a discrimination claim. *Bennett v. Watson Wyatt & Co.,* 136 F.Supp.2d 236, 248 (S.D.N.Y.2001).

**\*7** Plaintiff alleges in her Complaint and/or proffers in her opposition papers that she was wrongfully suspended; placed on probation; and transferred to a distant assignment which required a four-hour commute and involved high-risk duties. Plaintiff additionally alleges that she applied for a promotion twice by taking a civil service exam designed for that purpose, but was not promoted; although she does not state whether she passed the exam, she does allege that other probation officers achieved or retained the same or higher positions despite failing the same exam multiple times. Plaintiff further points to incidents suggesting discriminatory animus on the part of at least one supervisor, and alleges a systematic pattern of concerted ill-treatment of older Probation Department employees intended to encourage their resignation. Taken together, these allegations suffice minimally, when read liberally and in the light most favorable to Plaintiff, to state a claim of unlawful age-based discriminatory treatment with respect to her allegations of wrongful suspension, probation status, transfer, and failure to promote, with which Plaintiff may proceed under the NYSHRL.

*Retaliation*

By contrast, a plaintiff alleging retaliation against protected activity need only show that her employer's actions were "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 57 (2006). For example, a shift in job responsibility involving an increased emphasis on "more arduous" duties might be considered adverse by a trier of fact, even where those duties are included in the plaintiff's job description. *Id.* at 70–71. This relaxed requirement is equally applicable to retaliation claims brought under the ADEA. *Boland v. Town of Newington,* 304 F. App'x 7, 9 (2d Cir.2008).

In addition to allegations of discriminatory animus, Plaintiff also refers to several incidents which raise a plausible, albeit barely, inference of retaliatory animus on the part of her co-workers and several supervisors, including one incident—a vocal expression of apparent intent, on the part of a supervisor, to retaliate against Plaintiff due to her administrative complaint—which clearly suggests a direct causal connection between the alleged animus and abusive conduct. Her allegations of retaliatory conduct include allegations of conduct that, when read liberally and in the light most favorable to her, could have deterred a reasonable employee from filing a discrimination complaint (e.g., wrongful demotion to probationary status, transfer to more arduous duty with significantly increased travel time, failure to provide necessary training). Plaintiff has thus pleaded sufficiently her Title VII, ADEA and NYSHRL retaliatory discriminatory treatment claims.

*Hostile Work Environment Claim*

A plaintiff's civil rights are violated where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris,* 510 U.S. at 21 (internal quotation marks and citations omitted).

**\*8**  [W]hether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

*Id.* at 23.

The Court finds that Plaintiff's allegations are sufficient, at this pleading stage, to state a claim for age- or retaliation-based hostile work environment. However, insofar as it is premised upon age discrimination rather than retaliation, Plaintiff's claim of a hostile work environment may only proceed under the NYSHRL, as the conduct alleged was neither addressed in, nor reasonably related to, her prior complaint to the EEOC.

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Complaint is granted to the extent noted above. The case will go forward with respect to Plaintiff's retaliation claims under the ADEA and Title VII and her NYSHRL age- and retaliation-based disparate treatment and hostile work environment claims.

This Memorandum Opinion and Order resolves docket entry no. 9.

This matter continues to be referred to Magistrate Judge Fox for general pretrial management purposes.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 2565301

## Footnotes

1  As noted above, the Complaint in this action refers specifically only to post–2007 events.

**End of Document**                                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.